DOMINION VENTURES, INC., ET AL., PLAINTIFFS *v.* UNITED STATES, DEFENDANT

Court No. 79–8–01292

Before DiCARLO, *Judge.*

(Decided June 5, 1986)

*Donohue and Donohue (John P. Donohue)* for the plaintiffs.

*Richard K. Willard,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice (*Kenneth N. Wolf*) for the defendant.

### MEMORANDUM OPINION AND ORDER

DiCARLO, *Judge:* Plaintiffs contest the United States Customs Service (Customs) classification of merchandise imported from the United Kingdom as "Articles of precious metal, including rolled precious metal: * * * of gold, including rolled gold" under item 656.10, Tariff Schedules of the United States (TSUS). Plaintiffs claim that the merchandise is properly classified as "pictorial matter produced by relief or stencil printing process * * * and not specially provided for * * * Other," under item 274.70, TSUS, or as "Printed matter not specially provided for: * * * Other," under item 274.90, TSUS. The Court holds that Customs classification is incorrect, and that the merchandise is properly classified under item 274.70, TSUS.

---

At trial plaintiffs produced five witnesses and defendant none. On the basis of the stipulated facts, the testimony and exhibits offered at trial, the Court's assessment of the credibility of the witnesses, and its examination of the merchandise, the Court makes the following factual findings.

The articles in issue resemble postage stamps and are known in the philatelic trade as Staffa stamps or labels (labels). Staffa is a small, uninhabited and privately-owned island located off the coast of Scotland. The labels are not issued by a governmental body, but are produced privately and sold in the United States as collectibles.

The labels consist of a paper backing to which a gold surface is affixed. Gold is the component material of chief value at the time of manufacture. The merchandise is produced by a relief or stencil printing process variously known as embossing, steel dye engraving, blind embossing or printing in relief. The labels are each sold at retail in the United States at prices ranging from $20 to $25, and were entered at values ranging from $4.50 to $5.00 per piece. The labels each contain a few cents worth of gold. Although the larger labels contain a larger gold surface, there is no difference in price between large and small labels. There is no correlation between the price of gold and the value of the labels, and it is commercially unfeasible to remove the gold from the labels.

The textual matter on the labels identifies Staffa as the issuing authority, the denominational value, the fact that it is 23 karat gold, and additional words or phrases that vary depending on the theme of the label. The center portion of each label carries pictorial matter pertinent to some commemorative event as, for example, seals of each of the original Thirteen Colonies or a reproduction of a king, queen or flag.

The merchandise is sold at retail in the United States principally through direct mail marketing. The labels are marketed either as a single offering or as part of a group of labels united by a common theme, which is communicated by the textual and pictorial elements on the labels. Sales vary depending on the popularity of the theme depicted on the labels.

The sales brochures used to promote the merchandise place overwhelming emphasis on the gold content of the labels, suggesting that they have intrinsic value as gold articles. Since the labels actually offer no practical investment potential as gold articles, the brochures are misleading and some possibly fraudulent.

The issue presented is whether the merchandise consists "essentially of textual or pictorial matter produced by any printing process" within the meaning of Schedule 2, Part 5, headnote 1. Defendant concedes that if it does, the merchandise is more specifically provided for under one of the provisions of Schedule 2, Part 5 than under the classified provision.

Defendant argues that the gold content of the merchandise and the manner in which it is sold preclude a finding that the labels con-

sist essentially of textual or pictorial matter. In *Norman G. Jensen, Inc.* v. *United States,* 84 Cust. Ct. 76, C.D. 4846, *aff'd,* 68 CCPA 5, C.A.D. 1255, 634 F.2d 1345 (1980), merchandise virtually identical to that in this case was held properly classifiable as articles of gold under item 656.10, TSUS. The Court first rejected the claim that the labels were entitled to duty free entry as postage and revenue stamps since the merchandise did not come within the common meaning of the term postage stamps. The Court also held that the merchandise was not classifiable as pressure sensitive strips under item 790.55, TSUS, or as gold leaf under item 644.52, TSUS.

With respect to the tariff items claimed by plaintiffs in this case, the *Jensen* Court held that the labels could be considered "printed matter" within the purview of Schedule 2, Part 5, TSUS. It held that the merchandise could not be so classified, however, since plaintiffs had failed to prove that the labels consisted *"essentially of"* textual or pictorial matter, under Schedule 2, Part 5, headnote 1:

> The excerpts from the advertising brochure, which the court finds to be the only evidence offered pertinent to the inquiry concerning the essential character of the Staffa stamps, indicate to the court that the desirability of the merchandise is derived equally, if not principally, from the gold as a source of monetary value having an excellent investment potential and as a unique and novel substrate for the design thereon. It cannot be said that the essential character of the merchandise is imparted from the printed matter.

84 Cust. Ct. at 93. On appeal, the Court of Customs and Patent Appeals affirmed, adopting the reasoning of the Customs Court. 68 CCPA at 8, 634 F.2d at 1347.

The Court follows the legal holding in *Jensen* that "for an article to be 'printed matter' under part 5 [of schedule 2] the essential character of the article must be imparted by the textual and pictorial matter contained thereon." 84 Cust. Ct. at 92. But this case differs from *Jensen,* in that the brochures introduced at trial do not constitute the sole evidence pertinent to the essential character of the merchandise. While the manner in which merchandise is advertised and marketed is a factor to be considered in determining its classification, it is not controlling. *Nadel & Sons Toy Corp.* v. *United States,* 4 CIT 20, 22 (1982); *see Guardian Industries Corp.* v. *United States,* 3 CIT 9, 15 n.12 (1982). The Court is not bound by a decision involving similar merchandise where new evidence demonstrates that it should not be followed. *United States* v. *Stone & Downer Co.,* 274 U.S. 225 (1927); *Schott Optical Glass, Inc.* v. *United States,* 750 F.2d 62 (Fed. Cir. 1984).

Defendant argues that the following excerpts from the brochures show that the labels are marketed as gold articles:

> See how suprisingly little it now costs to acquire gold.
> A rare series of stamps for collectors and investors minted from pure 23 KARAT GOLD.

> A clearly attractive investment that adds to the philatelic value of rare postage stamps the monetary value of genuine gold.
>
> * * * combines the joy of collecting exquisitely worked stamps with the secure feeling of owning precious gold.
>
> * * * it affords you the sound basic investment value of *real gold* as well.
>
> * * * the very first investment to combine the value of stamps and gold to such a high degree.
>
> * * * combines the value of gold and the value of a collectible both.
>
> Precious metal has always been favored as a hedge against inflation. Especially when worked into items that have artistic value as well. A Picasso plate in sterling, for example, has double value. Its artistic value as a Picasso *and* its monetary value as silver.
>
> * * * [the official-seal stamps] have exceptional collector's value because they are extraordinarily rare stamps—minted by hand in high relief, not merely printed.*And* they have definite monetary value as well, because they are made of *pure 23k gold instead of paper.*
>
> * * * the first series of gold stamps ever made in the world. And they are wonderfully oversized—containing *over nineteen square centimeters of 23k gold in each* [emphasis in original].

The Court has examined the brochures and finds that they are at best misleading and have little probative value in determining the essential character of the merchandise. Defendant argues that Customs classification should be upheld since the descriptions of the merchandise in the brochures constitute admissions contrary to the interest of the importer. But it is not the function of the Court to sustain a higher rate of duty to punish an importer for puffery or even outright fraud. In order to preserve uniformity in Customs law, the Court is bound to ascertain objectively the essential character of the merchandise at the time of importation. *See Peter J. Schweitzer Division, Kimberly-Clark Corp.* v. *United States,* 54 CCPA 44, 45–46, C.A.D. 902 (1967); *F.W. Myers & Co.* v. *United States,* 9 CIT 19, 615 F. Supp. 569, 573 (1985); *PPG Industries, Inc.* v. *United States,* 4 CIT 143, 148 (1982).

Having rejected the brochures as evidence that the labels are properly classified as articles of gold, the Court finds that the evidence demonstrates that the imported articles are pictorial labels, and do not derive their value from their material components. The surfaces of the labels contain only a miniscule amount of gold, offering no practical investment potential as gold articles. The evidence is sufficient to overcome the presumptive correctness of the government's classification and to show that the labels are essentially printed matter under Schedule 2, Part 5, TSUS.

The labels are produced by a relief of stencil printing process within the meaning of the superior heading to item 274.70, TSUS.

The labels are collectibles which commemorate themes or events. The essential characteristic of each label is the pictorial matter depicted thereon. The pictorials are the essential characteristics of the labels regardless of the fact that they are printed on paper containing a slight amount of gold.

The merchandise consists essentially of printed matter under Schedule 2, Part 5, headnote 1 TSUS. The labels are more specifically described by item 274.70, TSUS, than by the classified provision or item 274.90, TSUS, since the essential feature of the labels is the pictorial material rather than the related textual matter.

Judgment will be entered accordingly. So ORDERED.